IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     CRIMINAL ACTION
                            :
          v.             :
                            :     NO. 09-181
MIKELL NESBITT                  :

MEMORANDUM

Bartle, J.                                   June 22, 2020

       The Court has before it the emergency motion of defendant Mikell Nesbitt to suspend or reduce sentence under 18 U.S.C. § 3582(c)(1)(A).

I

       On October 28, 2008, defendant pled guilty to two separate gunpoint robbery charges in the Court of Common Pleas of Philadelphia County.  Subsequently, on November 24, 2009, defendant pled guilty in this court to one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  This court sentenced him to 84 months imprisonment to be followed by three years of supervised release.  His sentence was imposed consecutively to his state court sentence of 96 months.  Our Court of Appeals confirmed defendant's federal conviction and sentence.  See United States v. Nesbitt, No. 09-4512 (3d Cir. Mar. 18, 2011).  Defendant has served the entirety of his state sentence and began his federal sentence on November 2, 2016.  He informs this court that his

"current release date is set for October 19, 2022" and that while he could not obtain the exact date, "he believes" he is "eligible for a halfway housing" in February 2021.  Defendant is currently serving his sentence at the Federal Correctional Institution in Fairton, New Jersey.

## II

Defendant's emergency motion to suspend or reduce sentence relies on section 3582(c)(1)(A)(i) as recently amended by the First Step Act.  It provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>       (A)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>             (i)  extraordinary and compelling reasons warrant such a reduction . . .

> and that such reduction is consistent
> with applicable policy statements issued
> by the Sentencing Commission.

Defendant has exhausted his administrative remedies, and we turn first to the elements that a defendant must meet under section 3582(c)(1)(A)(i) to obtain a reduction in sentence.  It provides that a court may order compassionate release for "extraordinary and compelling reasons" but only if the reduction in sentence is "consistent with applicable policy statements of the Sentencing Commission."

Congress has also enacted 28 U.S.C. § 994(t) which provides:

> The Commission, in promulgating general
> policy statements regarding the sentencing
> modification provisions in section
> 3582(c)(1)(A) of title 18, shall describe
> what should be considered extraordinary and
> compelling reasons for sentence reduction,
> including the criteria to be applied and a
> list of specific examples. Rehabilitation of
> the defendant alone shall not be considered
> an extraordinary and compelling reason.

The application note 1(A) of section 1B1.13 of the Sentencing Guidelines explains that "extraordinary and compelling reasons" exist where the defendant is:  (1) "suffering from a terminal illness" including among others "advanced dementia"; (2) "suffering from a serious physical or medical condition"; (3) "suffering from a serious functional or cognitive impairment"; or (4) "experiencing deteriorating physical or

-3-

mental health because of the aging process."  The latter three
grounds also require that the impairment "substantially
diminishes the ability of the defendant to provide self-care
within the environment of a correctional facility and from which
he or she is not expected to recover."

III

Defendant asserts that there exist "extraordinary and
compelling reasons which warrant" a sentence reduction because
the COVID-19 pandemic presents a danger to his health, his
release date is near, and that he is "not a danger to the
community, and has ample family/employment support."  With
respect to the pandemic, defendant provides extensive
information about the potential dangers to those in prison
facilities who cannot engage in the social distancing or take
other salutary measures necessary to mitigate the spread of
coronavirus.

Defendant maintains that his "serious health issues
involving high blood pressure" present extraordinary and
compelling reasons for compassionate release.  He states that he
was recently "taken to the prison infirmary when he had a fever,
was unable to feel most of the left side of his body and had
difficulty walking."  Defendant also argues that his "medical
condition is inaccurately described" in the Warden's letter
denying his request for compassionate release.  He maintains

that he has been "ignored for weeks at a time when [he] complain[ed] of medical problems."  He claims that he has "reported vision problems, numbness and pain left side of body/arm, hypertension, dizziness, pressure in head, and chronic depression."  According to the defendant, while he was prescribed "multiple medications" by the prison medical staff, he "still is dealing with the aforementioned health issues."  He further states that he is "frightened his health is in jeopardy, especially in light of the Coronavirus outbreak."

        The Government disputes defendant's characterization that his medical conditions are as serious as he claims.  The Government maintains that the defendant's medical conditions are "well controlled in BOP custody" and "[b]ased on a review of the defendant's medical records, he does not present any conditions that" would place him at a "higher risk for severe illness from COVID-19."  The Government also notes that, "during a medical examination on April 21, 2020, no fever or related symptoms were observed."  According to the Government, the "defendant does not present any of the health or family circumstances . . . instead presents a concern only based on the risk of acquiring COVID-19 in the prison environment."

        While the CDC lists "pulmonary hypertension" as a potential COVID-19 risk factor, the defendant's most recent medical evaluations from April 2020 indicate that defendant does

not have such a condition.  It states that defendant has
"primary (essential) hypertension."  Furthermore, his
hypertension was described as "mild" and he was prescribed two
medications for the condition.  With respect to the defendant's
left-side body pain, the BOP medical records state that the
defendant had several appointments scheduled with BOP medical
staff to address his pain, but he did not show up for any of the
appointments.

     The Court is, of course, mindful of the devastating
worldwide pandemic and the special dangers the highly contagious
coronavirus poses for the defendant and all others in prison.
However, the COVID-19 pandemic does not warrant the release of
every federal prisoner with health conditions that make them
more susceptible to the disease.  See United States v. Roeder,
2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).  While the
defendant claims that, "multiple cases of COVID-19 have been
reported inside his prison facility," defendant's personal
medical conditions seem controlled and appropriately managed by
the BOP.  The BOP, including Fairton, has in place protocols to
deal with this disease and the Attorney General has issued two
directives to the BOP concerning early release of inmates, which
the BOP is following.

     Based on the current record, defendant has not
established that his high blood pressure and related medical

-6-

conditions constitute a serious medical condition as defined in
the Sentencing Guidelines.  The serious medical condition under
the Sentencing Guidelines must be an impairment which
"substantially diminishes the ability of the defendant to
provide self-care within the environment of a correctional
facility and from which he or she is not expected to recover."
Defendant clearly does not meet this requirement.

          Even if he has the requisite serious medical
condition, the Court's analysis does not end here.  Section
3582(c)(1)(A) requires the Court to consider the "factors set
forth in section 3553(a) to the extent they are applicable"
before the Court may reduce his sentence.  These factors include
the need to:  "reflect the nature and circumstances of the
offense and the history and characteristics of the defendant";
"reflect the seriousness of the offense"; "promote respect of
the law"; and "afford adequate deterrence to criminal conduct."

          In this regard, defendant claims that he should be
granted compassionate release because his release date is near.
He asserts that he "has served the majority of his sentence and
for purposes of release has been rehabilitated."  He reports
that at the time of the filing, he has been in custody "for
slightly over 11.5 years on a combined 15 years sentence
(8 years on Commonwealth case and 7 years on Federal case)."  He
states that he "has served his sentence(s) without incident and

has been a model prisoner."  While the court applauds defendant for any strides he has made toward rehabilitation, these factors alone do not allow for his release.  Under 28 U.S.C. § 994(t), Congress has made it clear:  "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release.

Defendant also argues that compassionate release will not offend the factors favoring a reduction of sentence under §3553(a) because "[h]e is not any danger to society and has a support system in place if released."  He reports that he has "multiple children, a wife and many friends and family waiting to support him."  While this Court accepts defendant's representation that he has family support and has made efforts towards rehabilitation, this alone does not outweigh other section 3553(a) factors which support the need for him to serve the sentence imposed.

This Court cannot ignore the seriousness of defendant's violent crimes.  As noted above, defendant committed two gunpoint robberies in October 2008.  When law enforcement executed a search warrant at his house, it found a gun that he had stolen from an acquaintance and a ballistic vest.  These crimes are of a serious nature and underscore the danger defendant poses to the community.  Defendant has not provided any evidence to suggest otherwise.  Releasing defendant now

would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct.  <u>See</u> section 3553(a).

The Court, taking all the relevant facts into account, finds that Mikell Nesbitt has not established extraordinary and compelling reasons that warrant his entitlement to compassionate release.  Accordingly, the Court will deny the emergency motion of defendant to suspend or reduce sentence under 18 U.S.C. § 3582(c)(1)(A).